[Civ. No. 37529. First Dist., Div. Two. July 26, 1976.]

ROY J. BELL as Administrative Director, etc.,
et al., Plaintiffs and Respondents, v.
SAMARITAN MEDICAL CLINIC, INC., et al.,
Defendants and Appellants.

**COUNSEL**

Finch, Castello & Tennant and David R. Finch for Defendants and Appellants.

Evelle J. Younger, Attorney General, Robert L. Leberman, Richard L. Mayers, Deputy Attorneys General, for Plaintiffs and Respondents.

**OPINION**

**KANE, J.**—In this appeal from an order granting a preliminary injunction we are presented basically with one fundamental question:

In rendering medical services to industrially injured employees may a treating physician lawfully charge the *employee* for any amount in excess of that paid by the employer or its workers' compensation insurance carrier?

As we shall explain, the answer to this inquiry is clearly "no." We accordingly affirm the order of the trial court.

Roy J. Bell, as the Administrative Director of the Division of Industrial Accidents ("Director"), and the Workers' Compensation

Appeals Board ("Board") filed the present action to enjoin[1] the defendants, Samaritan Medical Clinic, Inc. and its member doctors, from engaging in a mode of practice whereby employees who sought the defendants' medical services for industrially related injuries would be charged the difference between the amount the defendants charged for their services and the amount paid by the employer's workers' compensation carrier.

Based upon the allegations of the complaint and the uncontroverted declarations of several industrially injured employees who had been treated by defendants, the court below granted a preliminary injunction, restraining the defendants from:

"A. Conditioning the rendition of medical services to an industrially injured individual upon the execution by said individual of any statement that the individual will be obligated to pay the difference between the amount paid by the employer's workmen's compensation insurance carrier and the amount of defendants' charges for the medical services rendered;

"B. Billing the industrially injured individual for the difference between the amount that defendants received from the employer's workmen's compensation insurance carrier and the amount of defendants' charges for the medical services rendered for treatment of the industrially related injury;

"C. Attempting in any manner or device to collect from industrially injured individuals the difference between the amount defendants have received from the employer's workmen's compensation carrier and the amount charged for medical services rendered during the last two years for treatment of industrially related injury;

"D. Asking, requesting or inducing any industrially injured individual to sign or execute any agreement, form or instrument wherein said individual would acknowledge or agree to pay or to become obligated to pay the difference between the amount received from the employer's workmen's compensation carrier and the amount charged by defendants

---

[1] Plaintiffs also sought declaratory relief and restitution. Those issues, however, have not yet been tried and the scope of this appeal is therefore limited to determining whether the trial court abused its discretion in granting the preliminary injunction (*Continental Baking Co.* v. *Katz* (1968) 68 Cal.2d 512, 527 [67 Cal.Rptr. 761, 439 P.2d 889]).

for the medical services rendered for treatment of an industrially related injury."

The central thrust of defendants' argument is that they are totally free to contract with their industrially injured patients and that—absent any express agreement with the employer or its workers' compensation insurance carrier—a physician is not bound by the Board's determination of what constitutes a reasonable amount for the services rendered. We do not agree.

It is settled beyond any dispute that one of the fundamental principles of the Workers' Compensation Act is that it is the *employer's* responsibility to provide all medical treatment reasonably required to effect the proper care and speedy recovery of injured employees (Lab. Code,[2] § 4600; *Zeeb* v. *Workmen's Comp. App. Bd.* (1967) 67 Cal.2d 496 [62 Cal.Rptr. 753, 432 P.2d 361]).

The legislative scheme adopted to implement this principle is apparent: It vests exclusive jurisdiction in the Board over any controversy relating to or arising out of the medical treatment of an injured employee in the absence of an express agreement between the party rendering the medical services and the employer or its insurance carrier (§ 5304; *Independence Indem. Co.* v. *Indus. Acc. Com.* (1935) 2 Cal.2d 397 [41 P.2d 320]; cf. *Tomlinson* v. *Superior Court* (1944) 66 Cal.App.2d 640 [152 P.2d 517]).

Section 5304 could not be more explicit. It provides: "The appeals board has jurisdiction over any controversy relating to or arising out of Sections 4600 to 4605 inclusive, unless an express agreement fixing the amounts to be paid for medical, surgical or hospital treatment as such treatment is described in those sections has been made between the persons or institutions rendering such treatment and the employer or insurer."

Appellants seek to avoid the application of section 5304 by contending that a contract between the physician and the employee is not a "controversy relating to or arising out of Sections 4600 to 4605 inclusive." In support of their contention appellants argue that section 4605 expressly authorizes their contracts with the injured employees. This contention is patently specious.

[2]Unless otherwise indicated, all references will be to the California Labor Code.

■ Section 4605 provides: "Nothing contained in this chapter shall limit the right of the employee to provide, at his own expense, a consulting physician or any attending physicians whom he desires."

Nothing in the record before us suggests that any of the injured employees sought any medical assistance from appellants on any basis other than industrially injured employees whose employers were liable for the reasonable expense thereof. On the contrary, the uncontroverted declarations and exhibits presented to the trial court confirm the fact that appellants submitted the required injury reports (§ 6409) to the Division of Labor Statistics and Research and submitted their billing statements to the particular employer's workers' compensation carrier. Indeed, in the form contract addressed: "To Our Industrial Accident Patients," appellants state that they "will continue to fill out and mail the industrial accident report and billings as we have done in the past."

Thus, section 4605 is in no way pertinent to the situation before us. That section simply recognizes that any injured employee is free to seek medical treatment and/or consultation in addition to, or independent of, that for which his employer is responsible. In such case, the employee is personally responsible for that expense; and it is a matter which is not within the jurisdiction of the Board.

When, however, a physician undertakes to treat an industrially injured patient and the employer accepts liability under section 4600, the exclusive jurisdiction of the Board attaches with respect to *any* controversy relating to the amounts to be paid for the services rendered by the physician (§ 5304).

This conclusion is fortified by reference to other elements of the legislative scheme. Thus, under section 5307.1, the Director is authorized —after public hearings—to adopt an official minimum medical fee schedule. The legislative history giving rise to the enactment of section 5307.1 is clear that it was intended to provide a vehicle for the expeditious resolution of controversies between physicians and employers or their workers' compensation carriers as to the reasonable value of the medical services rendered.

Obviously, if a physician is dissatisfied with the amount paid by the employer or its carrier, he may petition the Board for relief (§ 5304). If he contends that the application of the fee schedule by the Board is arbitrary, judicial review may be sought after exhaustion of administra-

tive remedies. Finally, if his quarrel is with the concept of the fee schedule per se, the appropriate forum would be the Legislature itself.

In the case at hand, however, there is no assertion that appellants have pursued any of the suggested avenues. Particularly significant is their failure to seek any relief from the Board concerning the amounts paid by the employer's carriers.

We are asked to conclude that since workers' compensation carriers generally adhere to the minimum fee schedule, payments made to appellants in amounts less than charged in their billing statements must be unreasonable. But the contrary conclusion—namely, that appellants' charges are unreasonable—is equally inferrable. The plain fact is that appellants have refused to submit this controversy to the Board which is empowered by statute to resolve precisely such an issue (§ 5304). Thus, we are presented with no record upon which we can reach any of appellants' contentions with reference to the minimum fee schedule.

It is also manifestly clear that the Legislature has determined that the protection of the injured employee from unreasonable charges for either legal or medical services is a matter of paramount concern. Section 4906 provides: "*No* charge, claim, or *agreement* for the legal services or disbursements mentioned in subdivision (a) of Section 4903, or *for the expense mentioned in subdivision (b) of Section 4903, is enforceable, valid, or binding in excess of a reasonable amount.* The appeals board may determine what constitutes such reasonable amount." (Italics added.)

Subdivision (b) of section 4903 refers to the medical expenses described in section 4600.

In *Workmen's Comp. Appeals Bd.* v. *Small Claims Court* (1973) 35 Cal.App.3d 643 [111 Cal.Rptr. 6], we held that the purpose of section 4906 is to protect industrially injured employees from the exaction of excessive fees. And in *Coviello* v. *State Bar* (1953) 41 Cal.2d 273 [259 P.2d 7], it was held to constitute unprofessional conduct for an attorney to secure or attempt to secure fees in excess of those allowed by Board.

Appellants at oral argument attempted to distinguish *Workmen's Comp. Appeals Bd.* v. *Small Claims Court* and *Coviello* on the basis that in each of those cases the particular attorney had, by representing the claimant, submitted himself to the jurisdiction of the Board whereas in the case at bench it is contended that appellants have not.

This argument must fail. As we pointed out earlier, the undisputed record shows that appellants have undertaken to treat industrially injured patients, to submit reports and billing statements to the employers' insurance carrier, and to accept payment from that carrier at least as a credit against the employee's "personal account." These facts demonstrate the attachment of the Board's jurisdiction (§ 5304). We see no distinction in substance between the physician's rendition of treatment and medical reports and the rendition of legal services by the claimants' attorney. Each is a necessary service rendered toward the realization of fundamental objectives of the Workers' Compensation Act. The Legislature has decreed that no agreement for either legal or medical services in excess of a reasonable amount as determined by the Board is valid (§ 4906; *Workmen's Comp. Appeals Bd.* v. *Small Claims Court, supra; Coviello* v. *State Bar, supra*).

It follows that appellants' efforts to circumvent the exclusive jurisdiction of the Board were properly restrained by the court below.

The order granting a preliminary injunction is affirmed.

Taylor, P. J., and Rouse, J., concurred.

A petition for a rehearing was denied August 25, 1976, and appellants' petition for a hearing by the Supreme Court was denied October 21, 1976.