[No. B001126. Second Dist., Div. Three. Mar. 29, 1984.]

FREMONT INDEMNITY COMPANY, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD
and HENRY H. ZEPEDA, Respondents.

966

**COUNSEL**

Allen, Rhodes & Sobelsohn and David B. Allen for Petitioner.

Stolzberg & Spencer and Michael M. Stolzberg for Respondents.

**OPINION**

**DANIELSON, J.**—Petitioner Fremont Indemnity Company petitions for review and annulment of an order of the Workers' Compensation Appeals

Board (Board) finding that the applicant sustained an injury to the right hip. We annul the order and remand the cause for further proceedings.

FACTS

Applicant and respondent Henry H. Zepeda (applicant) filed a claim for workers' compensation benefits alleging industrial injury to his back and right leg on March 18, 1976, against Service Greeting Card Company and its insurer Fremont Indemnity. In early 1978, the applicant had surgery to his hip, including a total hip replacement. At the trial on January 8, 1979, the applicant added the allegation of a right hip injury. Petitioner, insurance carrier Fremont Indemnity, contested injury to the right hip. Dr. Charles Bechtol, a specialist in implant surgery, was appointed as an independent medical examiner. In a report to the Board dated August 31, 1981, Dr. Bechtol stated, "For the hip, this injury is not industrially caused. . . . The total hip however, pre-existed the injury and is not aggrevated [sic] by it."

Dr. Bechtol was deposed on February 8, 1982. At that time he testified that "I think that reasonable medical probability would indicate that the X-rays show an old condition [in the hip] called Perthes' disease plus some wear and tear changes in the hip. Whether the accident added to these in my opinion is doubtful in the view of his history of activity since the accident." The deposition concluded with the following:

"Q. And based upon all that you read and the history that you took from Mr. Zebeda [sic], you reached conclusions in your report of August 31 that the hip problem was not related to the workers injury; is that true?

"A. Yes, that's correct.

"Q. And are you still of that opinion?

"A. Yes, I am."

After the deposition, the workers' compensation judge (WCJ) telephoned Dr. Bechtol and asked Dr. Bechtol some additional questions about the matter. In the opinion on decision, the WCJ described his contact with Dr. Bechtol as follows: "Because of what was conceived to be the equivocal nature of [Dr. Bechtol's] testimony . . . the undersigned communicated by telephone with Dr. Bechtol in an attempt to clarify the record. In response to our request, two supplemental reports were submitted. (Please see the undersigned's statement attached.) Said reports . . . have been stricken due

to counsel for Fremont Indemnity Company's objection to the indicated communication and because the record was complete without them."

In the first report following the first telephone call, dated June 29, 1982, Dr. Bechtol changed his opinion, stating "Regarding the evaluation of Henry Zepeda in my opinion the injury of April 1976 is not the cause of the difficulty in his hip leading to the total hip implant which was done in March of 1978. The injury may however, have excellerated [*sic*] the need to have this surgery performed by several years."

The WCJ telephoned Dr. Bechtol a second time, after which Dr. Bechtol issued two further reports. In a report dated July 29, 1982, Dr. Bechtol stated that "the injury did, however excellerate [*sic*] the need to have this surgery performed by several years."

In another report dated October 20, 1982, Dr. Bechtol stated, "At your request I have reviewed the extensive file in the case of Henry H. Zepeda. . . .

"Conclusion: On the basis of the material available at this time my opinion are [*sic*] as follows. (1) There was clearly a pre-existing condition in the hip probably Perthe's disease. (2) the injury of 3/18/76 aggreviated [*sic*] the previously existing condition of the hip. This is based on the history that the hip had previously been nonpainful and following the injury became painful. The operative report of 3/17/78 indicates that there was indeed sufficient damage to the hip joint to justify a total hip implant. (3) The injury undoubtedly excellerated [*sic*] the time at which the total hip implant became necessary. . . . (5) I would apportion his disability as 80% pre-existing and 20% due to the injury of 3/18/76."

The WCJ stated, in his opinion on decision, that the two reports were stricken from the record by the WCJ due to petitioner's objection to the communication between him and Dr. Bechtol, and because the record was complete without them. Attached to the opinion on decision was a written "Statement" of the WCJ that "The one and only telephone conversation that the undersigned has had with Charles O. Bechtol, M.D. was during or about the month of May, 1982 after the transcript of his February 8, 1982 deposition had been submitted. The purpose was to elicit from the doctor his unequivocal opinion as to what effect, if any, the alleged injury of March 18, 1976 had on the development of the condition diagnosed as Perthe's Disease. An appropriate question or appropriate questions were propounded to accomplish this purpose."

Petitioner Fremont Indemnity petitioned the Board for reconsideration of the case contending, inter alia, that petitioner was denied a fair trial and due process of law because of the WCJ's improper contact with the independent medical examiner after the case had been submitted for decision, which elicited three different reports from the examiner, which altered the examiner's opinion of the hip injury from one of noncompensability to partial compensability. In his "Report and Recommendation on Petition for Reconsideration," the WCJ conceded that he had had two telephone conversations with the independent medical examiner, and asserted that when the examiner had rendered his first report, he had based his opinion "on incorrect premises," but that in the examiner's subsequent reports, he had been "apprised of the correct legal principles involved." This gave rise to the change of opinion reflected in the later reports.

The Board denied reconsideration, stating that "we do not find that the WCJ made an improper contact with the IME which destroyed the value of the IME's opinion or his ability to render an impartial independent evaluation" and that because the parties subsequently had an opportunity to cross-examine Dr. Bechtol on the substance of the telephone conversations, petitioner was not denied due process of law.

### DISCUSSION

The issue presented in this review is whether the workers' compensation judge denied petitioner a fair trial and due process of law by contacting and talking with the independent medical examiner by telephone and obtaining additional medical reports from him after the case had been submitted.[1]

*The Workers' Compensation Appeals Board Exercises a Portion of the Judicial Powers of the State and, in Legal Effect, Is a Court. It Must Observe the Constitutional Mandates of Due Process of Law.*

■ The Workers' Compensation Appeals Board is a tribunal of limited jurisdiction, with those powers conferred upon it by the Constitution and the statutes of California. (Cal. Const., art. XIV, § 4; Lab. Code, §§ 111, 5300 et seq.; *Marcus* v. *Workmen's Comp. Appeals Bd.* (1973) 35 Cal.App.3d 598, 602 [111 Cal.Rptr. 101].)

■ In considering the issue in this case, we bear in mind that the Court of Appeal stated in *Massachusetts etc. Inc. Co.* v. *Ind. Acc. Com.* (1946)

---

[1]The petitioner also claims that the Board erred in its apportionment determination. However, since we annul and remand the matter on due process grounds, we do not reach the second contention.

74 Cal.App.2d 911, 913 [170 P.2d 36], that the Board ". . . exercises a portion of the judicial powers of the state and 'in legal effect is a court.' [Citations.] . . . in exercising adjudicatory functions the commission is bound by the due process clause of the Fourteenth Amendment to the United States Constitution to give the parties before it a fair and open hearing. 'The right to such a hearing is one of "the rudiments of fair play" (citation) assured to every litigant by the Fourteenth Amendment as a minimal requirement.' [Citations.]

"The reasonable opportunity to meet and rebut the evidence produced by his opponent is generally recognized as one of the essentials of these minimal requirements [citations], and the right of cross-examination has frequently been referred to as another [Citations]. . . ."

The Board, as a tribunal is required to afford all parties the fundamental right of due process which requires that "All parties must be fully apprised of the evidence submitted or to be considered, and must be given opportunity to cross-examine witnesses, to inspect documents and to offer evidence in explanation or rebuttal. In no other way can a party maintain its rights or make its defense." (*Massachusetts Etc. Inc. Co.* v. *Ind. Acc. Com.*, *supra*, 74 Cal.App.2d 911, 914.)

The Board finds facts and declares and enforces rights and liabilities. It acts as a court, and it must observe the mandate of the Constitutions of the United States and of California. This cannot be done except by due process of law. (*Carstens* v. *Pillsbury* (1916) 172 Cal. 572, 577 [158 P. 218].)

■ The right of cross-examination of witnesses is fundamental, and its denial or undue restriction is reversible error. (*Jackson* v. *Feather River Water Co.* (1859) 14 Cal. 18, 23.)

■ *The Initiation and Consideration by a Judge of Ex Parte Communications Concerning a Proceeding Pending Before That Judge Violates the Requirements of a Fair Trial and Due Process of Law.*

■ Where a workers' compensation judge's misconduct legally or practically prevents any party from having a fair trial, the findings and award resulting from such misconduct must be annulled, and the matter remanded for further proceedings as in the event of a mistrial in municipal and superior courts. (*Reimer* v. *Firpo* (1949) 94 Cal.App.2d 798, 801 [212 P.2d 23].) Even though workers' compensation matters are to be handled expeditiously by the Board and its trial judges, administrative efficiency at the expense of due process is not permissible. (See *Fidelity & Cas. Co. of New*

*York* v. *Workers' Comp. Appeals Bd.* (1980) 103 Cal.App.3d 1001, 1015-1016 [163 Cal.Rptr. 339]; *Hartford Accident & Indemnity Co.* v. *Workers' Comp. Appeals Bd.* (1982) 132 Cal.App.3d 796, 806-807 [183 Cal.Rptr. 440].)

We find *Gimbel* v. *Laramie* (1960) 181 Cal.App.2d 77 [5 Cal.Rptr. 88] to be analogous to the case at bench. In *Gimbel,* an auto accident case in which the plaintiff contended that he sustained a traumatic myocardial injury from striking the steering wheel, the judge called counsel into chambers after the case was submitted and advised them that he asked a friend, an amateur photographer, to examine the photograph of the steering wheel which was entered into evidence, and the friend stated that he was unable to detect any evidence of damage to the steering wheel. The reviewing court stated that, at that point, counsel could have properly moved for a mistrial because the friend of the judge was testifying as an unsworn witness concerning evidence in the case at a time when court was not in session, and he was not subject to cross-examination, and that this procedure constituted a denial of due process. (*Id.,* at p. 85.)

■ We find that, as in *Gimbel,* when the workers' compensation judge herein twice initiated telephone calls to the independent medical examiner to obtain further medical information and opinion, and in the process discussed the "correct legal principles" involved in the case, the workers' compensation judge effectively denied the petitioner a fair trial and due process of law by discussing the case with an unsworn witness out of court.

*Referees of the Workers' Compensation Appeals Board (Workers' Compensation Judges) Are Subject to the California Code of Judicial Conduct.*

■ The referees of the Workers' Compensation Appeals Board are the trial judges in workers' compensation cases.[2]

The Board may appoint referees in any proceeding. The administrative director of the Division of Industrial Accidents may appoint general referees, who have "the powers, jurisdiction, and authority granted by law, by the order of appointment, and by the rules of the appeals board." (Lab. Code, § 5310.)

---

[2]Pursuant to its rulemaking authority (Lab. Code, § 5307), the Board has adopted a rule which provides: "10302. Working Title of Referees and Referees in Charge. [¶] The Appeals Board hereby declares its intent that the working or organizational titles of 'referee' and 'referee in charge' shall be respectively 'workers' compensation judge' and 'presiding workers' compensation judge.'"

The title "workers' compensation judge" is the style of reference in common usage and is so used in this opinion.

The Board may, in accordance with its rules of practice and procedure, direct referees to try the issue of fact or law in any proceeding before it, holding hearings, make findings, orders, decisions, or awards based thereon, and make any order decision or award that the Board is authorized to make. (Lab. Code, § 5309.)[3]

Labor Code section 123.6 provides: "All referees employed by the administrative director shall subscribe to the California Code of Judicial Conduct adopted by the Conference of California Judges and shall not otherwise, directly or indirectly, engage in conduct contrary to such code."

The California Code of Judicial Conduct, adopted by the Conference of California Judges, reads, in part: "COMPLIANCE WITH THE CODE OF JUDICIAL CONDUCT

"Anyone, whether or not a lawyer, who is an officer of a judicial system performing judicial functions, including an officer such as a referee in bankruptcy, special master, court commissioner, or magistrate, is a judge for the purpose of this Code. All judges should comply with this Code . . . ."

Canon 3 A(4) of the California Code of Judicial Conduct provides: "(4) A judge should accord to every person who is legally interested in a proceeding, or his lawyer, full right to be heard according to law, and, except as authorized by law, neither initiate nor consider *ex parte* or other communications concerning a pending or impending proceeding. A judge, however, may obtain the advice of a disinterested expert on the law applicable to a proceeding before him if he gives notice to the parties of the person consulted and the substance of the advice, and affords the parties reasonable opportunity to respond.

"Commentary

"The proscription against communications concerning a proceeding includes communications from lawyers, law teachers, and other persons who are not participants in the proceeding, except to the limited extent permitted. It does not preclude a judge from consulting with other judges, or with court personnel whose function is to aid the judge in carrying out his adjudicative responsibilities.

---

[3]Rule 10348 of the Rules of Practice and Procedure of the Board provides that in any case regularly assigned to a workers' compensation judge under Labor Code sections 5309 and 5310, the orders, findings, decisions, and awards issued by the workers' compensation judge shall be those of the Board unless reconsideration is granted.

"An appropriate and often desirable procedure for a court to obtain the advice of a disinterested expert on legal issues is to invite him to file a brief amicus curiae."

■ Clearly, the referees of the Workers' Compensation Appeals Board, commonly known as workers' compensation judges, are officers of a judicial system performing judicial functions and are "judges" for the purposes of the Code of Judicial Conduct. As such they are subject to the same rules and constraints in the performance of the duties of their office, and in their adjudicative responsibilities, as are the judges of the other courts of this state.

■ The initiation or consideration, by a workers' compensation judge, of ex parte or other communications concerning a pending proceeding is proscribed by the California Code of Judicial Conduct since it denies to those persons legally interested in the proceeding the full right to be heard according to law.

The roles of independent investigator and of advocate are not compatible with the role and adjudicative responsibilities of a judge. Judges should be meticulous in their care to keep those roles separate since to unite them not only tends to violate the requirements of due process of law but also tends to erode "public confidence in the integrity and impartiality of the judiciary." (See Cal. Code of Jud. Conduct, canon 2.)

## DECISION

We annul the opinion and order denying reconsideration, and the findings and award as to the finding of an injury to the right hip arising out of and in the course of applicant's employment, and remand this matter to the Board for further proceedings consistent with this opinion.

Lui, Acting P. J., and Arabian, J., concurred.