[No. B056838. Second Dist., Div. Three. Mar. 24, 1992.]

J. DeWITT FOX, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD, BEKINS COMPANY
et al., Respondents.

COUNSEL

Kim H. Pearman for Petitioner.

No appearance for Respondents.

OPINION

**DANIELSON, J.**—Petitioner, J. DeWitt Fox, M.D., filed a series of medical liens from 1979 to 1987 for treatment of an industrially injured employee, Allen Hudson. The treatment included back surgery. The unpaid medical bills totalled approximately $59,253.17. Since 1987, Dr. Fox has been unable to obtain a hearing on the merits of his medical lien claim before a workers' compensation judge (WCJ). We issued a writ of review. We annul the order of respondent Workers' Compensation Appeals Board (Board) denying Dr. Fox relief from default, and remand to the Board with directions.

PROCEDURAL HISTORY

The procedural facts are complex, and the record reconstituted by the Board in this case is not complete. On March 19, 1979, applicant, Allen Hudson, born January 23, 1949, sustained an industrial injury to his back while employed as a custodian by the Bekins Company (Bekins). On May 19, 1979, Hudson sustained further injury to his back in an automobile accident that occurred while he was on his way for medical treatment for the

industrial injury. At some point in time he filed an application for workers' compensation benefits, and some temporary disability benefits and medical treatment were provided.

Hudson obtained medical treatment from J. DeWitt Fox, M.D., of Neurologic Center, Inc., for his back injury. Dr. Fox operated on Hudson's back on December 4, 1980, but it did not improve; on the contrary, his condition deteriorated thereafter. Hudson had also sustained an industrial psychiatric injury, and he became increasingly confused after 1979. Before trial Bekins objected to Dr. Fox's lien claim on the grounds the medical treatment was unnecessary and unreasonable. On February 25, 1986, WCJ Bettina Bate awarded applicant 100 percent permanent disability indemnity due to his psychiatric and orthopedic condition, further medical care, and reimbursement for self-procured medical treatment, including treatment by Dr. Fox, "in amounts to be adjusted by the parties or determined [by the WCJ] upon the filing of a petition and supporting documents."

After the award to Hudson, Bekins petitioned for reconsideration. Bekins contended, among other things, that the medical treatment rendered by Dr. Fox was unreasonable and unnecessary and that Dr. Fox's lien should be denied. The Board granted reconsideration. In its decision after reconsideration on May 21, 1986, the Board affirmed most of the findings and awards to Hudson, but deferred determination of Dr. Fox's lien. The Board stated: "In his report on reconsideration the WCJ notes that defendant [Bekins] filed a timely objection to this lien and the parties should be afforded the opportunity of litigating the issues of reasonableness and necessity. We agree with the conclusion of the WCJ and accordingly, we will defer the lien of Neurologic Center Inc. and J. DeWitt Fox, M.D. pending determination of these issues."

The matter was set for hearing on April 13, 1987. Dr. Fox's office administrator, John Edmond, appeared to represent him. The matter was continued, due to the illness of the WCJ, to August 18, 1987. At the August 18, 1987, hearing, however, no one appeared on behalf of the lien claimant. On September 16, 1987, WCJ Samuel L. Sosna, Jr., issued a "Notice of Intention to Disallow Lien," which stated that the lien claimant had 15 days in which to object. On October 27, 1987, WCJ Sosna issued the order disallowing the lien.

According to the declaration of Dr. Fox, at the time of the August 1987 hearing he had become ill with back pain due to spinal stenosis and bulging discs. The hearing and the response date to the notice of intention to disallow the lien were not calendared properly because office administrator Edmond

had left and was not replaced from August 1987 through October 1987. According to the declaration of defense counsel Charles Bentley, Bentley spoke to Dr. Fox on October 9, 1987, and advised him of the WCJ's notice concerning disallowance of the lien; Dr. Fox indicated to Bentley that he would probably get an attorney. According to Dr. Fox's declaration, Dr. Fox continued to be incapacitated, had back surgery on November 9, 1987, and took some time to convalesce thereafter.

Dr. Fox did, however, contact the applicant's attorneys about his lien problem. They filed a petition for reconsideration of the October 27, 1987, order on December 9, 1987, 43 days after the order, explaining that Dr. Fox was ill and arguing that lien claimants such as Dr. Fox should be afforded procedural due process.

The WCJ stated in his report on reconsideration that "[t]he writer has no particular recommendation to make in this instance . . . ." Later, however, in the same report he stated: "Frankly, the writer is at a considerable loss to imagine any reason why the lien claimant should allow a claim of more than $56,000.00 to accrue before taking action, or why he should once he decided to take action default a trial brought on calendar at his own instance, and furthermore, why he did not, if it was necessary to make some disposition of the trial itself, advise the Court of the fact he would not or could not appear, give reason therefor and seek continuance." The WCJ also declared that the lien was not supported as required by rule 10770 of the Board's rules.[1]

In a letter to the WCJ dated December 29, 1987, Dr. Fox stated he had intense back pain at the time of the hearing and thought the WCJ or defense counsel would call his office if there were any problem with the lien.

On February 8, 1988, the Board dismissed the petition on the ground it had been untimely filed, but stated that, were the Board to determine the merits, the Board would affirm the WCJ's decision. The Board also commented, in a footnote, "In examining the Official Address Record, we question whether the doctor was served with the notice of intention and the order. Defective service was not raised, however, either by the doctor in his letter of December 29, 1987, or by the applicant in his petition. We must assume, therefore, that service was effected." Dr. Fox, in propria persona, then petitioned this court for a writ of review in No. B033542. On July 6, 1988, we denied the petition for writ of review on the ground that Dr. Fox

---

[1] This rule sets forth the requirement that a lien be accompanied by a full statement or itemized voucher, with service on all parties to the litigation. (Cal. Code Regs., tit. 8, ch. 4.5, § 10770.) When treatment was provided, Labor Code section 4603.2 required an applicant or his physician to notify the employer of treatment and to submit periodic reports.

Unless otherwise designated, all statutory references will be to the Labor Code.

had not filed a petition for reconsideration of the WCJ's October 27, 1987, order.

Meanwhile, Dr. Fox engaged present counsel. On April 27, 1988, six months after the order disallowing the lien, present counsel filed a petition to set aside the order of October 27, 1987, pursuant to Labor Code section 5506 and Code of Civil Procedure section 473.[2] Accompanying the petition was the declaration of Dr. Fox, setting forth his incapacity during the critical time period in 1987. Bekins answered the petition, and the matter was ready for hearing.

Counsel for the lien claimant has stated that thereafter counsel could not get the matter set for hearing in 1988 and 1989, although counsel tried to do so by filing the appropriate documents. Failure to set the matter was attributed to the fact that no one could find the file. Counsel for the lien claimant finally sent a letter by certified mail to Richard W. Younkin, secretary and deputy commissioner of the Board, dated March 22, 1990, which set forth counsel's problem in obtaining a hearing date. A copy of this letter was sent to opposing counsel. Younkin made inquiry of presiding WCJ Bate in the Los Angeles office of the Board by a memorandum dated April 10, 1990. Sometime thereafter, the file was found, and a hearing was held on Dr. Fox's motion to be relieved from default.

On November 13, 1990, WCJ Sosna refused to grant Dr. Fox relief. The WCJ issued an opinion on decision that stated that lien claimant had a claim "which he apparently grossly neglected so as to permit it to grow to unreasonable amounts. . . ." The WCJ noted that the issue had been raised twice "in fora superior to this one" and the rulings had been adverse to the lien claimant. The WCJ expressed the view that nothing new of any substance had been presented to him in support of the petition.

---

[2]Section 5506 provides: "If the defendant fails to appear or answer, no default shall be taken against him, but the appeals board shall proceed to the hearing of the matter upon the terms and conditions which it deems proper. A defendant failing to appear or answer, or subsequently contending that no service was made upon him, or claiming to be aggrieved in any other manner by want of notice of the pendency of the proceedings, may apply to the appeals board for relief substantially in accordance with the provisions of Section 473 of the Code of Civil Procedure. The appeals board may afford such relief. No right to relief, including the claim that the findings and award of the appeals board or judgment entered thereon are void upon their face, shall accrue to such defendant in any court unless prior application is made to the appeals board in accordance with this section. In no event shall any petition to any court be allowed except as prescribed in Sections 5950 and 5951."

Code of Civil Procedure section 473 provides, in pertinent part, that "[t]he court may, upon such terms as may be just, relieve a party or his or her legal representative from a judgment, order, or other proceeding taken against him or her through his or her mistake, inadvertence, surprise, or excusable neglect. . . ."

Lien claimant Dr. Fox petitioned for reconsideration. In his report and recommendation on the petition, the WCJ declared that "[t]he arguments concerning the Petitioner's condition of health and any excuses for permitting the growth of a lien to some $50,000.00 are *irrelevant*, since the [*sic*] they have nothing whatever to do with the merits of a claim, in addition to which Petitioner offers no real argument to counter the proposition that he simply sat on his rights not only after service of a Notice of Intention but also after receiving the October 27, 1987 Order." (Italics added.) The WCJ stated also that "[t]he contention that Petitioner has never been permitted to present the merits of his claim is indeed accurate; however, these matters were properly decided on procedural grounds, Petitioner never having operated permissibly within excepted [*sic*] procedures in order to avail himself of an opportunity to present the claimed merits of his position." The WCJ concluded by declaring that "[t]enacity, should be recognized and admired, though unfortunately, it is not a proper basis on which to over-turn a proper previous decision." On February 5, 1991, the Board adopted the WCJ's report and denied relief. This timely writ petition followed.

We issued the writ of review on September 12, 1991, directing the Board to "certify and return to this court . . . a full and correct copy of the records reviewed by the [Board] on the petition for reconsideration . . . ." On October 28, 1991, the Board filed an application for extension of time to file the record of proceedings, telling us in essence that the file in this matter had disappeared for the second time. The Board stated: "Board records indicate that on August 14, 1991, the case record for this 1979 Board filing was sent to the State Records Center. However, following issuance of the court's writ of review, personnel at the records center were unable to locate the case file. Subsequently, searches at the Board's Los Angeles office and Long Beach office (where another claim by applicant Allen Hudson was filed) have failed to produce the case file required for court review. Under the circumstances, it is necessary for the Board to reconstruct the case file from copies of documents provided by the parties, primarily respondent employer."

We granted the Board's request for an extension. ■ We now have a reconstructed record, consisting primarily of documents from the employer's file. (The employer, which has been duly served with all the filings in this writ proceeding, has not filed any brief here.) Those documents reflect that Dr. Fox submitted a series of lien claims from 1979 forward, and that the employer has always been apprised of the medical treatment of Hudson by Dr. Fox, and of the mounting charges. They also indicate that numerous continuances had delayed the Hudson proceedings for seven years, from 1979 to 1986. While the underlying action remained unresolved, the Fox lien claims also remained unresolved. The file also contains over 50 pages of

defense "billing reviews" by the employer's adjusting agency regarding Dr. Fox's claim, from which it can be inferred that Dr. Fox properly submitted specific information concerning his medical lien claim during the time Hudson's claim was pending. In the absence of the original file, we cannot tell. Dr. Fox was not in charge of the file. Responsibility for the file must be borne by the official caretakers in a manner resulting in no detriment to Dr. Fox. We shall assume that Dr. Fox has complied sufficiently with rule 10770 of the California Code of Regulations in the past or would be able to do so at a hearing on the merits.

## DISCUSSION

Section 4903 provides, in pertinent part: "The appeals board may determine, and allow as liens against any sum to be paid as compensation, any amount determined as hereinafter set forth in subdivisions (a) through (i). . . ." Subdivision (b) deals with liens for medical treatment. It provides: "The reasonable expense incurred by or on behalf of the injured employee, as provided by Article 2 (commencing with Section 4600) and, to the extent the employee is entitled to reimbursement under Section 4621, medical-legal expenses as provided by Article 2.5 (commencing with Section 4620) of Chapter 2 of Part 2." Section 4600 provides medical benefits to injured employees.

 Subdivision (b) of section 4903 has been broadly interpreted to authorize reimbursement for most medical services provided to an industrially injured employee. The Supreme Court has held, in *Kaiser Foundation Hospitals* v. *Workmen's Comp. Appeals Bd.* (1974) 13 Cal.3d 20, 25 [117 Cal.Rptr. 678, 528 P.2d 766], that "[a]lthough the language of section 4903 appears to grant the board wide discretion to grant or deny liens (see also Lab. Code, § 4906, . . .) that discretion is limited to determining whether or not the amount of the lien is reasonable in relation to the medical services rendered to treat the employee's injuries." The court observed that the Board had not been empowered by the Legislature to disallow or reduce a proper lien. (*Id.* at p. 23.) *Kaiser* held that, unless an apparently valid lien is litigated, the lien may not be reduced without consent of the lien claimant. (*Id.* at pp. 23, 28.)

Section 4906, subdivision (a), provides that "[n]o charge, claim, or agreement for the legal services or disbursements mentioned in subdivision (a) of Section 4903, or for the expense mentioned in subdivision (b) of Section 4903, is enforceable, valid, or binding in excess of a reasonable amount. The appeals board may determine what constitutes a reasonable amount." In 1989 this last sentence was deleted and subdivisions (b) through (e) were added, setting forth detailed procedures governing the fees of attorneys for

applicants, procedures clearly permitting the exercise of discretion by the Board over the amount of legal fees. (Stats. 1989, ch. 892, § 43, No. 5 Deering's Adv. Legis. Service, p. 2992.) Subdivisions (b) through (e) are effective for injuries occurring after January 1, 1990. The purpose of section 4906 has long been recognized to be to protect parties against excessive legal and medical fees, but it has been held that before the appeals board can reduce an attorney's requested fee in a given case, the attorney must be given notice and an opportunity to be heard. (*Reich, Adell, Crost & Perry* v. *Workers' Comp. Appeals Bd.* (1979) 99 Cal.App.3d 225, 236 [160 Cal.Rptr. 218].)

The Board has exclusive jurisdiction over medical liens (§§ 5300, subd. (b), 5304; *Bell* v. *Samaritan Medical Clinic, Inc.* (1976) 60 Cal.App.3d 486, 489 [131 Cal.Rptr. 582]), and pursuant to section 5307.1 the Administrative Director of the Division of Industrial Accidents (now the Division of Workers' Compensation) has adopted an official medical fee schedule. (See Cal. Code, Regs., tit. 8, ch. 4.5, §§ 9791.1, 9792.) The official medical fee schedule is prima facie evidence of the reasonableness of fees charged for medical services although higher fees may be charged "when reasonable, . . . accompanied by itemization and explanation . . . [and not] in excess of [the physician's] usual fee." (§ 5307.1.) The Board may reduce a physician's fee if it is considered excessive. (See *S. Stanford Kornblum, M.D., Inc.* v. *Workers' Comp. Appeals Bd. (Bunch)* (1988) 53 Cal.Comp.Cases 265, writ den.)

There is, however, little case law concerning the procedural rights of medical lien claimants. A commentator on workers' compensation practice has stated that the rights of lien claimants, who provide services to injured employees, derive from the employees' rights and that due process is required. (See, e.g., 2 Herlick, Cal. Workers' Compensation Law Practice (4th ed. 1991) Liens, § 17.1, pp. 17-4 - 17-5.) An early case held that the Fourteenth Amendment to the United States Constitution requires the Board to give parties a fair and open hearing. (*Kaiser Co.* v. *Industrial Acc. Com.* (1952) 109 Cal.App.2d 54, 58 [240 P.2d 57].) Board rule 10500 provides that the Board "shall serve on each lien claimant, the notice of time and place of hearing and all findings, orders, decisions and awards which relate to the lien claim. No lien shall be disallowed or reduced unless the lien claimant has been given notice and an opportunity to be heard." (Cal. Code Regs., tit. 8, ch. 4.5, § 10500.)[3] In *Lien Collections, Inc.* v. *Workers' Comp. Appeals Bd. (Murdock)* (1989) 54 Cal.Comp.Cases 412, writ denied, the Board denied the

---

[3]At the time of the hearings in the present matter, rule 10500 provided in pertinent part: ". . . The Workers' Compensation Appeals Board shall serve on each lien claimant, except a lien claimant whose lien is solely for litigation costs, the notice of time and place of hearing

lien of a claimant who had failed twice to appear at hearings; apparently, no reason for the nonappearances was given. In *John E. Carr, M.D., Inc.* v. *Workers' Comp. Appeals Bd. (Maciel)* (1987) 52 Cal.Comp.Cases 534, writ denied, the Board also denied the lien of a claimant who had failed twice to appear.

Board rule 10562 (Cal. Code Regs., tit. 8, ch. 4.5, § 10562) may give applicants some protection in case of failure to appear, but defendants in workers' compensation cases have more clear-cut protection in Labor Code section 5506. That section provides that defaulting defendants may apply for relief "substantially in accordance with" the procedure outlined in Code of Civil Procedure section 473.[4] ■ There does not appear to be any specific statutory provision for relief from default for lien claimants. Fundamental fairness requires such provision, as does the workers' compensation system, which is governed by rules subject to liberal construction by the courts, "with the purpose of extending . . . benefits for the protection of persons injured in the course of their employment." (§ 3202.) It is obviously beneficial to industrially injured employees to have the rights of those providing them with professional services adequately observed and protected.

Given the lack of any express language in the Labor Code or Board's rules providing relief to lien claimants, we hold that lien claimants may seek relief from the consequences of a failure to appear by utilizing a procedure substantially similar to Code of Civil Procedure section 473, until such time as the matter is more specifically addressed by statutory provision or Board rule. Neither the WCJ nor the Board questioned the availability of that procedure in the instant case. We conclude that Dr. Fox chose an appropriate and timely method for seeking relief from the dismissal for his failure to appear. We note also that the California Supreme Court, in *Shamblin* v. *Brattain* (1988) 44 Cal.3d 474, 478 [243 Cal.Rptr. 902, 749 P.2d 339], has reaffirmed some basic principles relating to relief from default. "It is the policy of the law to favor, whenever possible, a hearing on the merits.

---

and all findings, orders, decisions and awards which relate to the lien claim. The Workers' Compensation Appeals Board shall serve on each lien claimant whose lien is solely for litigation costs any finding, order, decision or award which allows or disallows the lien in whole or in part. No lien shall be disallowed or reduced unless the lien claimant has been given notice and an opportunity to be heard. 'Litigation costs' within the meaning of this Section includes any costs which may be allowed under the provision of Labor Code Sections 4600 and 5811. . . ." (Cal. Admin. Notice Register, tit. 8, Register 81, No. 23, p. 736.28.)

[4] Workers' compensation procedure is not entirely governed by the Code of Civil Procedure, as it operates with less formality (Lab. Code, § 5708), but some sections of the Labor Code, such as section 5506, refer to the Code of Civil Procedure. An overriding feature of the workers' compensation system is the liberal construction mandated by Labor Code section 3202.

Appellate courts are much more disposed to affirm an order when the result is to compel a trial on the merits than when the default judgment is allowed to stand. [Citation.] Therefore, when a party in default moves promptly to seek relief, very slight evidence is required to justify a trial court's order setting aside a default. [Citation.] . . ." (*Ibid.*)

With respect to the WCJ's denial of relief, we must focus on his stated reasons for taking the less favored position on relief from default. His preoccupation with the size of the lien claim, the time period in which the amount assertedly owed accumulated, and the allegedly insufficient manner in which the lien claim was presented was with *the merits of the lien claim, and not with the procedural issue presented.* Assuming Dr. Fox made a proper showing for relief from the dismissal of his lien claim, he was entitled to litigate these issues. The WCJ's assertions as to the manner in which the amount allegedly owing had accrued appears inaccurate in view of the detailed billing reviews, which were completed by March 1984 or earlier. ▮ There is no statutory time limit for filing a medical lien except that governing the claim of the employee or dependent. (*Kaiser Foundation Hospitals* v. *Workers' Comp. Appeals Bd.* (1985) 39 Cal.3d 57, 66-68 [216 Cal.Rptr. 115, 702 P.2d 197].) Before a lien can be resolved, there must be an award. (*Id.* at p. 67.) Thus, the long process of making the award in the present case had much to do with the growth of the Fox lien.

The real issue before the WCJ, however, was whether Dr. Fox had presented grounds for relief from the dismissal for his failure to appear. Dr. Fox relied on his illness and the departure of a key employee, simultaneously, as the ground for his inaction during August and October 1987. At no point did the WCJ specifically question the credibility of Dr. Fox. In his report and recommendation on Dr. Fox's petition for reconsideration by the Board, the WCJ stated that Dr. Fox's reasons for not appearing at the hearing in August 1987 were "irrelevant." ▮ If it is true that the facts upon which Dr. Fox relied to establish "mistake, inadvertence, surprise, or excusable neglect" were considered irrelevant by the WCJ, the WCJ misunderstood what he was supposed to decide. Further, his reference to the merits of the claim suggest that he had prejudged the situation. Under these circumstances, we cannot say that Dr. Fox has received the fair and impartial treatment in the Hudson workers' compensation proceedings that due process requires.

We annul respondent Workers' Compensation Appeals Board's February 5, 1991, order denying reconsideration. We remand the matter to the Board and direct the Board to provide petitioner, J. DeWitt Fox, with a hearing on the merits of his lien claim. The record of proceedings is to be maintained

with care so that the rights of the parties and lien claimants are properly preserved. It is also important that the record be maintained in such a manner as to facilitate further meaningful judicial review should that become necessary. The hearing on the merits is to be conducted by a workers' compensation judge other than Samuel L. Sosna, Jr.

Klein, P. J., and Croskey, J., concurred.