[No. G016645. Fourth Dist., Div. Three. Apr. 21, 1995.]

HAND REHABILITATION CENTER et al., Petitioners, v. WORKERS' COMPENSATION APPEALS BOARD and VONS COMPANIES, Respondents.

**COUNSEL**

O'Flaherty & Belgum and Robert M. Dato for Petitioners.

Tharp & Adcock and Charles Adcock for Respondents.

**OPINION**

WALLIN, J.—Hand Rehabilitation Center (HRC) and Theodore Hylwa, M.D., petitioned for a writ of review of a decision of the Workers' Compensation Appeals Board (WCAB) denying their lien claims for medical

costs. We granted review. They contend they were denied due process because the workers' compensation judge (WCJ) and the WCAB relied upon the report of a medical examiner agreed to by the applicant and the defendant employer, but to whom they had not consented. HRC also contends the WCAB improperly found its services were performed by unqualified personnel and that it incorrectly concluded HRC's lien could not be allowed unless it first filed a fictitious business name statement. We affirm the WCAB order.

Erma Obernier was a meat wrapper for Vons Markets for several years. In 1987 she began to have pain in both wrists. She continued to work until April 1990 when she finally reported the injury. She filed for workers' compensation benefits in May 1990 claiming injury to both hands.

Hylwa, an orthopedic surgeon, began treating Obernier in August 1990 for carpal tunnel syndrome. He referred her to HRC for therapy. Hylwa performed wrist surgeries on Obernier in September of 1990 and January of 1991. Vons paid some of the medical charges, but objected to others as excessive and repetitive. Hylwa and HRC filed liens in the workers' compensation proceeding.

Dr. Charles Lane, a hand specialist, examined Obernier in June of 1991 and found her condition to be permanent and stationary at that time. However, Hylwa and HRC continued to treat Obernier. A mandatory settlement conference was held in November 1991 on Obernier's claim. Obernier agreed to dismiss her application and see an agreed medical examiner (AME), to resolve the disability and medical issues. In February 1992, Hylwa performed surgery on Obernier's elbow. Obernier never filed a compensation claim for injury to her elbow.

The AME, Dr. Michael Patzakis, issued his report in June 1992. He agreed with Dr. Lane that Obernier's condition had become permanent and stationary as of June 1991. For medical treatment after she became stable, and in the future, she required only over-the-counter pain medication. The elbow condition, for which Hylwa had performed surgery and continued to treat her, was nonindustrial.

In April 1993, Obernier and Vons stipulated to an award. Obernier was declared 59 percent disabled and received $42,560. Vons agreed to hold Obernier harmless with respect to Hylwa's and HRC's liens and litigate them. At the time Hylwa had liens totaling $25,845 and HRC had liens totaling $51,773.

In June 1993, at Vons's request, Dr. Lane reviewed the bills and reports submitted by HRC and Hylwa. He concluded the amount of therapy provided by HRC exceeded the norm for the condition by 10 times. He also

noted the therapy was provided by an occupational therapy assistant, when the standard of practice requires such therapy be provided under the direct supervision of a registered occupational therapist. He also stated that Hylwa's charges were far above the community standard.

In July 1993 Hylwa and HRC filed a certificate of readiness to proceed with hearing on the lien claims. The hearing was held in January 1994. Neither party presented witnesses, but relied solely on the reports previously submitted in the proceedings.

The WCJ issued his opinion and order in April 1994 denying most of the lien claims. He found all of HRC's lien was improper because it had failed to file a fictitious business name statement, but he gave it 45 days to file one. He also found the therapy was provided by unlicensed personnel. The services were billed as physical therapy, but the reports were signed by an occupational therapy assistant. The workers' compensation official medical fee schedule requires all therapy services be performed under the direct supervision of a physician or licensed therapist. The WCJ also disallowed all of Hylwa's charges incurred after June 1991, concluding that, based on the AME's report, Obernier's condition had become permanent and stationary at that time and her elbow condition was not industrial. Hylwa's charges from before June 1991 were allowed but reduced as excessive. He was awarded $6,632.

HRC and Hylwa did not receive the WCJ's opinion and order until June 8, 1994. They filed a petition for reconsideration with the WCAB on June 30. The WCAB found the petition to be timely. HRC never filed a fictitious business name statement. The WCAB denied the petition and affirmed the WCJ's order.

I

 Hylwa and HRC contend they were denied due process by the WCJ's and the WCAB's reliance upon the report filed by the AME, Dr. Patzakis, whom they had no part in selecting.[1] We disagree. Their due process rights were protected. They simply failed to present any evidence to rebut the other properly admitted evidence.

---

[1] Hylwa and HRC primarily object to the report of Dr. Patzakis, who was the AME. However, they also suggest the same arguments apply to the reports of Dr. Lane, who was a defense-appointed specialist. Our analysis applies to the reports of both doctors.

A medical lien claimant's rights are governed by Labor Code section 4903.[2] It provides that the WCAB may determine, and allow as liens against any sum to be paid as compensation, reasonable medical expenses incurred by or on behalf of an injured employee, as provided by article 2 (commencing with section 4600). ■ However, a lien claimant's rights are derivative of the injured employee's rights. (*Beverly Hills Multispecialty Group, Inc.* v. *Workers' Comp. Appeals Bd.* (1994) 26 Cal.App.4th 789, 803 [32 Cal.Rptr.2d 293]; *Fox* v. *Workers' Comp. Appeals Bd.* (1992) 4 Cal.App.4th 1196, 1204 [6 Cal.Rptr.2d 252].)

Subdivision (b) of section 4903 has been broadly interpreted to authorize reimbursement for most medical services provided to an injured employee. It is axiomatic the medical expenses must be related to the employee's industrial injuries. The WCAB's discretion is limited to determining whether the amount of the lien is reasonable in relation to the medical services rendered to treat the employee's industrial injuries. (*Kaiser Foundation Hospitals* v. *Workmen's Comp. Appeals Bd.* (1974) 13 Cal.3d 20, 25 [117 Cal.Rptr. 678, 528 P.2d 766].) It may not disallow or reduce a lien unless it is properly litigated. (*Id.* at p. 23.) A lien claimant is entitled to due process (*Beverly Hills Multispecialty Group, Inc.* v. *Workers' Comp. Appeals Bd.*, *supra*, 26 Cal.App.4th at pp. 803-804; *Fox* v. *Workers' Comp. Appeals Bd.*, *supra*, 4 Cal.App.4th at p. 1204) but it has the burden of proving by a preponderance of the evidence that the claim is industrial (§ 3202.5).

At any time in the workers' compensation proceeding, the parties may agree on a medical examiner to evaluate the issues in dispute. (§ 4060, subd. (c).) The reports of an AME must be served upon any lien claimant requesting service and, once filed in the record of the proceeding, are deemed to be in evidence without further order. (Cal. Code Regs., tit. 8, § 10722.) All parties are entitled to submit rebuttal evidence and to cross-examine the AME. (§ 5704; Cal. Code Regs., tit. 8, § 10536.)

■ At issue here are Hylwa's lien claim for expenses relating to a surgery he performed on Obernier's elbow and HRC's lien claims for therapy following that surgery.[3] Obernier's industrial claim was only for injury to her hands and wrists. The surgery was performed after the AME and Dr. Lane declared Obernier's injury to be permanent and stationary. Both doctors concluded the elbow condition was not industrial.

Hylwa and HRC contend they were denied due process by the WCJ's and the WCAB's reliance upon the reports of the AME because they were not

---

[2]All statutory references are to the Labor Code unless otherwise indicated.
[3]Other aspects of HRC's lien are discussed in part II, *post*.

allowed to participate in his selection and were denied any meaningful opportunity to cross-examine him.

There is simply no authority which allows lien claimants to participate in the selection or designation of an AME or any other expert chosen by the parties. Reports of all examining physicians are admissible. (§ 5703, subd. (a).) It would turn the rules of evidence upside down to say that evidence is inadmissible absent obtaining everyone's approval of the experts.

The due process issue is not whether Hylwa and HRC are "*bound*" by the opinions of the AME or other defense experts, but whether they were afforded due process in the admission of those reports into evidence before the WCJ and WCAB. In *Beverly Hills Multispecialty Group, Inc.* v. *Workers' Comp. Appeals Bd.*, *supra*, 26 Cal.App.4th 789, the court concluded the lien claimant was denied due process because it was not served with the defense medical reports before the trial on its claim, nor was its attorney allowed to cross-examine witnesses or raise any objections at the lien hearing. (*Id.* at p. 805.)

Here, Hylwa and HRC participated fully in the lien hearing. They were served with the AME's and Dr. Lane's reports before the hearing but presented no evidence to rebut them. They chose to present no witnesses and did not subpoena either physician or otherwise indicate they wished to cross-examine. Their sole objection to the reports was that they had not agreed to the examiners. Hylwa and HRC had the burden of proving their claims were for treatment of an industrial injury. Vons presented competent evidence they were not, which Hylwa and HRC failed to rebut.

Hylwa and HRC respond they could not have produced any evidence to rebut the AME's or Dr. Lane's report because they were issued after discovery had been cut off. They contend discovery was cut off on November 8, 1991, when Obernier participated in a mandatory settlement conference (MSC) on her application. We note this MSC occurred *before* the surgery to which the claims relate.

Section 5502 provides for an MSC to be conducted from 10 to 30 days after the filing of a declaration of readiness to proceed. If the dispute is not resolved, a hearing must be held within 75 days after the declaration of readiness to proceed is filed. (§ 5502, subd. (d)(1).) Discovery is cut off on the date of the MSC and evidence not disclosed by then is inadmissible unless the proponent of the evidence can demonstrate it was not available at the time of the MSC. (§ 5502, subd. (d)(3).)

When Obernier and Vons conducted their settlement conference on November 8, 1991, her application was voluntarily dismissed. The MSC was

ordered off calendar. In July 1993, Hylwa and HRC filed their declaration of readiness to proceed which triggered the hearing date. Hylwa and HRC had all the reports before this time. Their attorney declared that all discovery had been completed. Nothing in the record suggests they were not allowed to conduct discovery regarding the AME's report, or that they were precluded from calling the AME as a witness at the hearing.

Nor are we concerned that the WCJ believed that as lien claimants Hylwa and HRC were "bound" by the AME's report. Had the WCJ or the WCAB used this as a reason for excluding any rebuttal evidence offered, or for precluding them from cross-examining an AME, we would be concerned. But they did not. No rebuttal evidence was offered. The WCJ also stated it found the AME's report to be the most credible evidence in the record. Furthermore, the WCAB rejected the due process argument because it found the reports were properly put into the record before the WCJ and the lien claimants "gave no indication that they wished to cross-examine [the AME] in regard to his opinion." There was no error.

## II

In addition to rejecting the liens for services rendered after June 1991, when Obernier's condition became permanent and stable, the WCAB disallowed HRC's lien for services provided by an occupational therapy assistant. It contends this ruling was error.

The WCAB has exclusive jurisdiction over medical liens. (§§ 5300, subd. (b), 5304; *Bell* v. *Samaritan Medical Clinic, Inc.* (1976) 60 Cal.App.3d 486, 489 [131 Cal.Rptr. 582].) It has adopted an official medical fee schedule. (§ 5307.1; see also Cal. Code, Regs., tit. 8, §§ 9791.1, 9792.5.) The schedule is prima facie evidence of the reasonableness of fees charged for medical services although other and higher fees may be charged "when reasonable," and when "[a]ccompanied by itemization and . . . explanation." (§ 5307.1, subd. (b)(1) & (2).) The WCAB may reduce a medical fee it considers excessive or disallow a fee which is not authorized. (*Fox* v. *Workers' Comp. Appeals Bd., supra,* 4 Cal.App.4th at pp. 1203-1204.)

HRC submitted bills for over $50,000 in physical therapy services rendered by Jane Clancey, an occupational therapy assistant. The official medical fee schedule authorizes physical therapy, provided it is under the continuous and direct supervision of a physician or a licensed physical therapist. There is no provision in the official fee schedule for occupational therapy. The reports were all signed by Clancey and there was no indication that either a licensed physical therapist or physician was in attendance. Dr.

Lane opined therapy reports could only be prepared by a licensed occupational therapist, not an assistant, and therapy itself could only be rendered under the direct supervision of a licensed therapist. The WCJ disallowed the charges because they were billed as physical therapy, raising the presumption that physical therapy was provided, and Clancey was not licensed to provide physical therapy. The WCAB disallowed the charges, impliedly finding they were for occupational rather than physical therapy, because there was no evidence the therapy was performed under the direct supervision of a physician or licensed occupational therapist.

■ HRC first contends the WCJ erred in concluding Clancey performed *physical*, not *occupational*, therapy simply because the services were billed as physical therapy. It points out that the official medical fee schedule has no billing code for occupational therapy and physical therapy is the closest equivalent. His point has merit, but the WCAB also seemed to reject this reasoning of the WCJ. The WCAB denied the charges because Clancey, an occupational therapy *assistant*, is not licensed to provide occupational therapy *unless* it is under the direct supervision of a licensed therapist or a physician. The bills and reports indicate neither.

HRC contends on appeal we should assume Hylwa supervised the therapy since he referred Obernier to HRC which is in the same facility as his office. Again, the burden is on the lien claimant to prove the lien is for properly provided services. (§ 3202.5.) HRC could have provided documentation that Hylwa or some other properly licensed personnel supervised the therapy. It did not.

### III

■ Finally, the WCAB also rejected HRC's entire lien because it failed to file a fictitious business name statement. (Bus. & Prof. Code, § 17918.) It contends it was not "maintaining" an action and the WCAB is not a "court" as those terms are used in Business and Professions Code section 17918. It also contends Vons waived the issue by failing to raise it in its original objection letter.

Business and Professions Code section 17918 provides in pertinent part, "No person transacting business under [a fictitious business name], may maintain any action upon or on account of any contract made, or transaction had, in the fictitious business name in any court of this state until the fictitious business name statement has been executed, filed, and published as required by this chapter." HRC was seeking to recover from Vons services rendered under its fictitious business name.

First, HRC contends that as a lien claimant, it was not "maintaining" an "action" on a transaction had in its fictitious business name. Rather, it was a party to a proceeding filed by someone else, the injured worker. The case law concerning this section is old. But it, and common sense, tell us that HRC was maintaining an action. The verb "maintain" does not mean the same as "to commence" the action, but means to support what already exists. (*Nicholson* v. *Auburn Gold Min. etc.* (1907) 6 Cal.App. 547, 549 [92 P. 651].) Obernier had long ago settled her claim for compensation. This action was a proceeding only to litigate the validity of Hylwa's and HRC's claims. Indeed, it is well settled that a lien claimant may institute workers' compensation proceedings on its own. (*Independence Indem. Co.* v. *Indust. Acc. Com.* (1935) 2 Cal.2d 397 [41 P.2d 320].) HRC was maintaining an action.

Next, HRC contends the WCAB is not a "court" but is merely an administrative agency. Again we disagree.

The WCAB has exclusive jurisdiction over workers' compensation medical liens. (§§ 5300, subd. (b), 5304.) It is the only body authorized to consider such disputes and its decisions are subject to review by the appellate courts. Section 111 grants it the power to "exercise all judicial powers vested . . . under this code." It has been termed a "constitutional court" and its decisions have res judicata effect. (*Azadigian* v. *Workers' Comp. Appeals Bd.* (1992) 7 Cal.App.4th 372, 376 [8 Cal.Rptr.2d 643]; *Solari* v. *Atlas-Universal Service, Inc.* (1963) 215 Cal.App.2d 587, 593 [30 Cal.Rptr. 407].) It " 'exercises a portion of the judicial powers of the state and 'in legal effect is a court.' " (*Fremont Indemnity Co.* v. *Workers' Comp. Appeals Bd.* (1984) 153 Cal.App.3d 965, 971 [200 Cal.Rptr. 762].)

HRC also contends that none of the policy reasons behind the fictitious business name statement requirement are found here, as Vons paid *some* of HRC's bills. ■ The purpose of the section is to give public notice of the individual members of partnerships " 'with such definiteness and particularity that those dealing with them may at all times know who are the individuals with whom they are dealing . . . ." (*Berg Metals Corp.* v. *Wilson* (1959) 170 Cal.App.2d 559, 574 [339 P.2d 869].) An employer being asked to pay substantial therapy bills, and attempting to verify their reasonableness, has a legitimate interest in knowing the economic relationship between the rehabilitation provider and the physician prescribing the therapy.

■ Nonetheless, even the WCJ recognized that the failure to file a fictitious business name statement was a mere technical defect which should not deprive HRC of an otherwise valid claim. (See *Folden* v. *Lobrovich*

(1957) 153 Cal.App.2d 32, 34 [314 P.2d 56] [failure of plaintiff to file fictitious business name statement is technical defense which must be raised by defendants or is waived].) The WCJ's order gave HRC 45 days to file a statement. It made no attempt to do so.[4]

Finally, HRC argues Vons's failure to raise the fictitious business name statement in its first objection letter waives the issue. Although the issue must be raised, or it is waived, there is no authority for HRC's proposition that it must be raised in the first objection letter. The issue was raised well before the lien hearing. HRC was given ample time to file a statement. We cannot say it was waived.

The order of the Workers' Compensation Appeals Board is affirmed.

Sills, P. J., and Crosby, J., concurred.

---

[4]HRC argues because it was not served with the WCJ's order until after 45 days from its entry, any effort to file a statement would have been futile. Obviously, the time would not begin to run until the date the order was served. Indeed, HRC argued, and the WCAB agreed, the time for filing its petition for reconsideration did not commence to run until it was served with the order.