KELLY, J.
 

 On June 10, 1940, defendant and appellant Walter Johnson, then being Fire Chief of the City of Oceanside, while in the course of his duties as such, responding to a fire call, suffered in a collision a fracture of the skull. The city of Oceanside carried, at the time, compensation insurance, and the carrier accepted liability so that no proceedings for the adjustment of any claim for the same were had before the Industrial Accident Commission. The accident was witnessed by a Dr. Hoskins who happened to be the family physician of appellants and who at once took the matter in charge, diagnosed the case as a skull fracture and called respondent’s assignor, Dr. Werden, a specialist in brain surgery, to come from San Diego and deal with the ease. Although partially conscious immediately after the accident, Mr. Johnson soon lapsed into unconsciousness and was in that condition when Dr. Werden arrived, and did not regain consciousness for some weeks thereafter. Dr. Werden advised that an immediate operation was necessary which, with Mrs. Johnson’s consent and the assistance of Dr. Hoskins, he pro
 
 *Supp. 837
 
 ceeded to perform and thereafter he cared for Mr. Johnson, who made a good recovery. The seriousness of the injuries and the entire efficiency of Dr. Wer den’s work are not questioned.
 

 Dr. Wer den testified that, on his arrival at Oceanside, he was told by Dr. Hoskins that the case was not a compensable one and that he was being called to care for it as a private employment and that after he had examined the patient and told Mrs. Johnson of his condition “Mrs. Johnson said I was to take care of Mr. Johnson as a private case and that they would take care—she and Mr. Johnson would see to it that I was paid accordingly.”
 

 Dr. Hoskins recollects no such conversation and Mrs. Johnson’s testimony is to the effect that she merely assented to Dr. Hoskins’ suggestion that Dr. Wer den be called in, and did not herself see Dr. Wer den before the operation nor make any arrangement at all about his compensation. In the absence of findings, however, it must necessarily be assumed that the trial court accepted Dr. Wer den’s account of the matter.
 

 There is, however, no question that some weeks after the accident and after Mr. Johnson had so far recovered as to be able to discuss the case with Dr. Wer den, there was a conversation between them in which the doctor expressed the opinion that in view of the nature of the injury and the type of operation required, a fee of “approximately one thousand dollars” would be reasonable, and in which Mr. Johnson in substance said that such a charge would in his opinion be reasonable and would be satisfactory to him. They discussed the schedule of fees allowed by the Industrial Accident Commission and mutually agreed that for this case they were too low, and after they had agreed that the fee ought to be approximately $1,000, Mr. Johnson said in substance that he would see this paid. It would seem from the record that Dr. Wer den’s attention to the case continued for some time after this conversation was had.
 

 According to Dr. Wer den, he was asked by the Industrial Accident Commission for a report upon the case about three weeks after the time of the accident, and made them some sort of a report. He also caused to be entered on a ledger card charges for all of his services in the case in accordance with the scale allowed by the Industrial Accident Commission, and collected from the insurance carrier the amounts
 
 *Supp. 838
 
 so charged, aggregating $481.48 “plus apparently ten dollars more paid several months thereafter. ’ ’ In October, 1942, he wrote Mr. Johnson asking the latter to “pay up the balance due from you on your account with me as per arrangements previously made.” Mr. Johnson failed to reply until January 11, 1943, at which time he sent the doctor a cheek for $200 which has been applied on the claim, but prior to its receipt Dr. Werden had assigned the claim to the plaintiff corporation which, on January 8, 1943, commenced against both Mr. and Mrs. Johnson the present action, to recover $568.52, consisting, as we take it, of the balance of the said $1,000 after crediting thereon the above mentioned $481.48, plus $50 claimed by Dr. Werden for attendance as an expert witness in an action brought by Mr. Johnson against the operator of the vehicle which collided with him.
 

 Judgment was by the municipal court given in the plaintiff’s favor for $358.52, with interest and costs, altogether amounting to $494.88, and from this judgment the present appeal is prosecuted.
 

 The appellants contend that the claim of the respondent, pursuant to the contract of its assignor with the appellants, is against public policy and void, in that the Workmen’s Compensation Act and the constitutional amendment supporting the same affords a complete and exclusive manner and procedure of adjusting all controversies as between an injured employee and his attending physician.
 

 There can be no doubt that as between an injured employee and his employer or insurance carrier, the theory of the appellants is sound.
 

 “It is well settled that the Workmen’s Compensation Act provides substantially that, where the specified conditions exist, the right to recover compensation in a proceeding before the Industrial Accident Commission shall be, as against the employer, the exclusive remedy of the employee.”
 
 (Nelson
 
 v.
 
 Associated Indemnity
 
 Corporation, 19 Cal.App.2d 564, 566 [66 P.2d 184].)
 

 “The California Workmen’s Compensation Act provides the only means by which an injured employee can recover compensation from his employer for injuries received in the course of and arising out of his employment, and it abrogates the common-law liability of the master for such injuries in the eases to which it is applicable. . . . When the specified conditions exist, the remedy provided by the act is exclusive
 
 *Supp. 839
 
 of all other statutory or common-law remedies.”
 
 (Alaska Packers Assn.
 
 v.
 
 Industrial Acc. Com.,
 
 200 Cal. 579, 583 [253 P. 926].)
 

 In the event, however, that a claim is presented by a physician or surgeon for treatment rendered or prescribed for an injured employee and it appears that such physician or surgeon was employed independently of procedure by the Industrial Accident Commission, the problem becomes far more complicated. The right to make lawful contracts are rights enjoyed by the citizens under the protection of the Fourteenth Amendment of the Constitution of the United States. (12 C.J. 1122, see. 841.)
 

 In the instant case it is apparent that Dr. Werden having been called in by the attending physician, with the knowledge and approval of the wife of the injured employee, was by implication, if not indeed by express terms, proceeding under contract with the appellants. Can it be said that the Employer’s Liability Act and the provisions of the state Constitution authorizing the statute were intended to abrogate the constitutional right of the parties to .so contract? In approaching this problem we cannot assume that the Legislature either wilfully or ignorantly intended to violate the organic law of the United States. If two theories may reasonably proceed from the wording of the act, one in harmony with our organic law as expressed in the federal Constitution, and the other in conflict therewith, we must assume that the Legislature intended the theory in harmony rather than the one in conflict.
 

 After the partial recovery of the male appellant, and when he was in a mental condition to contract, he agreed with Dr. Werden that the schedule of fees provided by the Industrial Accident Fund were inadequate to compensate him for the services rendered, and that his fee should be approximately $1,000. It is immaterial that this contract was entered into after the operation was performed rather than before. If, prior to the treatment the patient was mentally able to contract, the contract would have been bilateral. After the services rendered the contract was unilateral. In either event the consideration was sufficient and the agreement binding. We cannot say it is contrary to public policy, but on the contrary, in harmony with the constitutional rights of the parties to enter into a lawful contract. We do not regard the circumstance that Dr. Werden in fact got part of his compen
 
 *Supp. 840
 
 sation from the insurance carrier as changing the situation.
 

 The appellants next contend that the Industrial Accident Commission had full and complete jurisdiction of the claim of the respondent’s assignor, excluding the jurisdiction of the municipal court. Section 4605 of the Labor Code provides :
 

 “Nothing contained in this chapter shall limit the right of the employee to provide, at his own expense, a consulting physician or any attending physician whom he desires. ’ ’
 

 The appellants, however, contend that the section merely provides for a consulting physician and that any controversy between such physician and the employee can be determined only by the Industrial Accident Commission, and relies on Labor Code section 5304. We cannot agree with either conclusion of the appellants. Unquestionably, pursuant to section 4605 of the Labor Code, an injured employee has the right to retain either a consulting physician or, in the alternative, any attending physician, the sole condition being that such physician must be retained at the expense of the injured employee. The section states the right of the employee in the disjunctive. It is true that it is the duty of the employer of an injured employee to provide medical attention as well as surgical supplies, crutches, apparatus, nurses and medicines. It is, however, the right of the injured employee to refuse the assistance of a physician so supplied and to contract independently for a physician of his own choice and at his own expense. Turning to section 5304 of the Labor Code, we find that it reads:
 

 ‘ ‘ The commission has jurisdiction over any controversy relating to or arising out of sections 4600 to 4605, inclusive, unless an express agreement fixing the amounts to be paid for medical, surgical or hospital treatment as such treatment is described in those sections; has been made between the persons or institutions rendering such treatment and the employer or insurer.”
 

 We think that a reasonable interpretation of this section vests the Industrial Accident Commission with the exclusive power to hear and determine any issue growing out of a controversy as to whether or not the physician was supplied by the employer or chosen by the employee at his own expense. Such view is supported by the last clause of section 5304, excepting from the provisions thereof an agreement fixing the amount to be paid for medical, surgical or hospital
 
 *Supp. 841
 
 treatment where it has been made between the
 
 “persons or institutions rendering such treatment and the employer or insurer.”
 
 (Italics added.) It is quite apparent that the Legislature in enacting such section did not have in mind a contract entered into between the injured employee and a physician of his own choice and at his own expense. Any other view of the provisions of the sections under scrutiny would vest in the Industrial Accident Commission the right to abrogate or modify any contract entered into between the employee and his physician and would nullify the rights of the parties as guaranteed by the Fourteenth Amendment to the federal Constitution. This view finds support in the case of
 
 Independence Indemnity Co.
 
 v.
 
 Industrial Acc. Com.,
 
 2 Cal. 2d 397 [41 P.2d 320], wherein it is said:
 

 “There is no escape from the conclusion, therefore, that the Commission has exclusive jurisdiction over all claims for compensation against an employer or insurance carrier involving medical, surgical and hospital treatment to the injured employees, in the absence of an
 
 express agreement between the parties.
 
 (Italics added.)
 

 In
 
 Foulks
 
 v.
 
 McGibbon,
 
 10 Industrial Accident Commission Reports, 89, it is said:
 

 “Upon proceedings regularly had, the applicant was awarded disability indemnity ’against the insurance carrier of his employer by reason of an industrial injury, but was denied his claim for medical expenses on the ground that upon procuring his own physician, the defendant, Dr. McGibbon, for the operation required by the injury, the employer and the insurance carrier were not notified and had no opportunity to furnish medical or surgical treatment until after the performance of the operation. Applicant later brought against the said defendant a claim of a decision by the Commission determining the reasonable value of his physician’s services. The Commission denied the claim on the ground of want of jurisdiction over any controversy relating to the value of medical services as between the injured employee and his own physician, where the insurance carrier and the employer had been relieved from liability. It was held that section 17 (b) of the Compensation Act reposing jurisdiction in the Commission over controversies arising out of medical treatment relates only to controversies between the person rendering the treatment and the employer or the insurance carrier.”
 

 
 *Supp. 842
 
 We hold, therefore, that the municipal court had jurisdiction.
 

 The appellants further contend that the facts of the case do not warrant a liability on the part of Mrs. Johnson, wife of the injured employee. Civil Code section 171 provides that the separate property of the wife is liable for the payment of debts contracted by the husband or wife for the necessaries of life furnished to them or either of them while they are living together. That the services rendered by the respondent’s assignor were necessaries of life cannot be disputed. The saving of the life of Mr. Johnson was as vital to his wife as to himself.
 

 In
 
 Evans
 
 v.
 
 Noonan,
 
 20 CaLApp. 288 [128 P. 794], the court, in considering what constituted necessaries of life states, at page 293:
 

 “In the present case, however, there is nothing which requires us to go farther than to say that, under our law, it most certainly at the least means the
 
 common necessaries of life,
 
 or such things as are proper and requisite for the sustenance of man. With equal certainty these include, besides food, clothing, and shelter, such medical attentions in cases of illness as are absolutely requisite to relieve physical suffering and pain and to overcome or conquer disease, if by such attentions it can be done.”
 

 In order to subject the wife to the liability created by section 171 of the Civil Code it is necessary to join her as a party defendant with her husband.
 
 (Evans
 
 v.
 
 Noonan, supra; Wisnom
 
 v.
 
 McCarthy,
 
 48 Cal.App. 697 [192 P. 337].)
 

 The appellants further challenge an item of $50 included in the judgment as a witness fee on the part of Dr. Werden, the plaintiff’s assignor, during the trial of a case. The record does not disclose in what court the testimony was given. We think it fair to assume that it was either in the municipal court or superior court. Section 4300Í of the Political Code provides for witnesses’ fees for witnesses who testify in the municipal courts and reads ih such respects as follows:
 

 “Witnesses in municipal courts, except as otherwise provided by law shall be paid the fees provided to he paid to witnesses in the superior court in the county or city and county in which such municipal court is situated.”
 

 Section 4300g of the Political Code provides for witness fees and mileage in the superior court and in this respect reads:
 

 
 *Supp. 843
 
 “Witness fees, except as in this title otherwise provided: For each day’s actual attendance when legally required to attend upon the superior court, per day, $2.00 in civil cases . . . mileage actually travelled, one way only, per mile, 10c.”
 

 These statutory provisions are exclusive in the absence of an express agreement. (27 CaLJur. 187.) The testimony of Dr. Werden in this respect, appears on page 27, line 10, et seq. of the transcript:
 

 ‘ ‘ Q. There was no financial arrangement made about that ?
 

 “A. What you mean is did they promise to pay me $50.00? Do you mean that?
 

 “Q. Yes.
 

 “A. I can’t recall whether there was an arrangement made about that or not. Such services are usually paid for.
 

 “Q. That is what I was getting at. You were asked to come and you did come.
 

 “A. Yes, I did come.
 

 “Q. Expecting to be paid.
 

 “A. Sure.”
 

 Under the circumstances the charge must be reduced to the statutory fee of two dollars plus mileage which we cannot determine from the evidence. We will assume that it was one mile and order the judgment reduced to the extent of $47.90.
 

 The judgment is, therefore, modified by reducing the amount to $446.98 and, as so modified, is affirmed; the parties respectively to pay their own costs on appeal.
 

 Haines, P. J., and Thompson, J., concurred.